IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KRISTINE VALDEZ, a.k.a. Kristine
Sauceda, on her own behalf and on behalf of
Dezideria Sauceda and Santiago Sauceda,

      Plaintiffs,                                          No. CIV 05-451 MV/ACT

vs.

NEW MEXICO HUMAN SERVICES
DEPARTMENT, *et al*.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss, filed on May 12, 2005, **[Doc. No. 3]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion will be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

For the past five years, Plaintiff Kristine Valdez (a.k.a. Kristine Sauceda) has received Medicaid benefits for her two children--twelve-year-old Dezideria Sauceda and eight-year-old Santiago Sauceda. On or about January 8, 2005, Plaintiff received a computer-generated notice from Defendant Human Services Department's Income Support Division stating that her children's Medicaid benefits would end on February 28, 2005, unless she completed a recertification application. The notice further advised Plaintiff that she would need to complete the recertification application by February 1, 2005, if she wanted to continue to receive benefits "without delay." In response to the notice, Plaintiff completed and faxed a recertification

application, a copy of her expiration notice, and five pages of income documentation on January 25, 2005.

On or about February 19, 2005, Plaintiff received a computer-generated notice from the Income Support Division advising her that her case had been closed because she "[f]ailed to reapply for benefits." Plaintiff left several messages for her case worker, Ms. Zamora, but received no response.

On or about February 28, 2005, Plaintiff received two letters (one for each child) from SALUD, the Managed Care Program that manages New Mexico Medicaid, stating that her children no longer qualified for SALUD. The letter suggested several reasons why her children no longer qualified for SALUD, including the possibility that they were no longer receiving Medicaid.

On March 30, 2005, Plaintiff filed a Complaint alleging that Defendants "deprived Plaintiff of a property right by failing to take prompt action on her children's Medicaid case, and by closing their Medicaid case without providing Plaintiff with an adequate adverse action notice advising her of the regulation they were relying on," "deprived Plaintiff of a property right by allowing the computer to automatically close her children's Medicaid case before they conducted an *ex-parte* review of their circumstances to determine if Plaintiff's children qualified for any time of Medicaid assistance" and failed to comply with various state and federal regulations applicable to Medicaid. In her Complaint, Plaintiff seeks extensive injunctive and declaratory relief for her children as well as systemic changes.

On May 12, 2005, Defendants filed the instant motion to dismiss.

## LEGAL STANDARD

A court may not dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts supporting his/her claim that would entitle him/her to relief. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989). In considering a Rule 12(b)(6) motion, the court must assume as true all well-pleaded facts, and must draw all reasonable inferences in favor of the plaintiff. *Housing Auth. of the Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir. 1991). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his/her claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that [he/she] has not alleged or that the defendants have violated the.... laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). "[G]ranting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)).

## DISCUSSION

Defendants argue that Plaintiff's Complaint should be dismissed because 1) the Medicaid laws upon which Plaintiff bases her claims do not allow for a private right of action under § 1983; 2) Plaintiff failed to exhaust her administrative remedies prior to seeking judicial review; 3)

Plaintiff failed to state a claim for violation of due process; and 4) Plaintiff's Fifth Amendment claims are barred.

## I. Private Right of Action under Medicaid Act

Defendants contend that Plaintiff's § 1983 claims[1] must be dismissed because there is no private right of action to enforce the Medicaid Act. The Medicaid program, established by Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, is a cooperative federal-state program created to provide medical assistance to needy families and individuals. States are not required to participate in the Medicaid program, but once a state elects to participate, it must do so in accordance with federal statutes and regulations. 42 U.S.C. § 1396a(a)(10). This case raises the question of what happens when a state allegedly fails to live up to the conditions imposed on it by Congress.

The Supreme Court has explained that in legislation, like the Medicaid Act, that is enacted pursuant to the spending power, "the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 28, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). Nonetheless, in some circumstances, legislation enacted pursuant to the spending power can create rights privately enforceable against state officers through § 1983. *See, e.g., Wright v. Roanoke Redevelopment & Housing Authority*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) (Public Housing Act

---

[1] Section 1983 creates a cause of action against any person who, under the color of state law, deprives an individual of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. A remedy is available under § 1983 for violations of federal statutory and constitutional law. *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).

enforceable through § 1983);[2] *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) (Title XIX of the Social Security Act enforceable through § 1983 ).[3]

In the past, courts determined if a legislative provision created an enforceable right of

---

[2]   The Public Housing Act at issue in *Wright v. Roanoke Redevelopment & Housing Authority* provided in relevant part:

Dwelling units assisted under this chapter shall be rented only to families who are lower income families at the time of their initial occupancy of such units. Reviews of family income shall be made at least annually.  A family shall pay as rent for a dwelling unit assisted under this chapter (other than a family assisted under section 1437f(o) of this title) the highest of the following amounts, rounded to the nearest dollar:

   (1) 30 per centum of the family's monthly adjusted income;

   (2) 10 per centum of the family's monthly income; or

   (3) if the family is receiving payments for welfare assistance from a public agency and a part of such payments, adjusted in accordance with the family's actual housing costs, is specifically designated by such agency to meet the family's housing costs, the portion of such payments which is so designated.

42 U.S.C. § 1437a (1982 ed. and Supp. III).

[3]   Title XIX of the Social Security Act provided in relevant part:

   A State plan for medical assistance must ... provide ... for payment ... of hospital services, nursing facility services, and services in an intermediate care facility for the mentally retarded provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State ...) which the State funds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards and to assure that individuals eligible for medical assistance have reasonable access ... to inpatient hospital services of adequate quality.

42 U.S.C. § 1396a(a)(13)(A) (1982 ed., Supp. V).

action under § 1983 by applying the three-part test set forth in *Blessing v. Freestone*, which provides:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms.

520 U.S. 329, 340-41, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) (internal citations omitted). Applying this test, many courts found that various provisions of the Medicaid Act created rights enforceable under § 1983.[4]

In 2002, however, the United States Supreme Court tweaked the first part of the *Blessing* test and insisted that nothing short of an unambiguously conferred right would support a cause of action under § 1983. *Gonzaga University v. Doe*, 536 U.S. 273, 283, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). Specifically, the *Gonzaga* Court stated that the language used in some of the Supreme Court's prior opinions could be read to suggest that a plaintiff can enforce a statute under § 1983, "so long as the plaintiff falls within the general zone of interest that the statute is intended to protect." *Id.* at 283. The *Gonzaga* Court clarified this potential misunderstanding, stating that "it is rights, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of [§ 1983]." *Id.* Thus, under *Gonzaga*, a plaintiff may bring suit under § 1983 as an intended beneficiary of a statute only if the statute *unambiguously* demonstrates

---

[4] *See, e.g., Westside Mothers v. Haveman*, 289 F.3d 852, 864 (6th Cir. 2002) (42 U.S.C. §§ 1396a(a)(8) and 1396a(a)(10)(A) ); *Doe v. Chiles*, 136 F.3d 709, 719 (11th Cir. 1998) (42 U.S.C. § 1396a(a)(8)); *Pediatric Specialty Care, Inc. v. Arkansas Dep't of Human Services*, 293 F.3d 472, 478-79 (8th Cir. 2002) ( 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4)(B), and 1396d(r)).

congressional intent to confer an individual or personal right on that plaintiff. *Id*. "Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983." *Id*. at 284, n3. *Gonzaga* did not change the overall framework for discerning rights enforceable under § 1983 but "merely refined the first part of the three-part test, providing guidance to courts in determining whether a plaintiff is an intended beneficiary of a statute." *Sanchez v. Johnson*, 301 F.Supp.2d 1060, 1062 (N.D. Cal. 2004).

A statute unambiguously demonstrates congressional intent to confer individual or personal rights by using "rights-creating language." *Gonzaga*, 536 U.S. at 287. Such language must clearly impart an "individual entitlement," and have an "unmistakable focus on the benefited class." *Id*. at 284. The *Gonzaga* court noted that "[w]e have recognized, for example, that Title VI of the Civil Rights Act of 1964[5] and Title IX of the Education Amendments of 1972[6] create individual rights because those statutes are phrased with an *unmistakable focus* on the benefited class." *Id*. at 284 (emphasis in original) (internal quotes omitted). Post-*Gonzaga*, courts have reached mixed results on whether various provisions of the Medicaid Act create rights enforceable under § 1983.[7]

---

[5] Title VI provides: "No person in the United States shall ... be subjected to discrimination under any program or activity receiving Federal financial assistance" on the basis of race, color, or national origin. 42 U.S.C. § 2000d.

[6] Title IX provides: "No person in the United States shall, on the basis of sex ... be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

[7] *Compare Sabree v. Richman*, 367 F.3d 180, 192 (3rd Cir. 2004) (42 U.S.C. § 1396a(a)(8) creates a private right of action) *and Pediatric Specialty Care, Inc. v. Arkansas Dept. of Human Services*, 364 F.3d 925, 930 (8th Cir. 2004) (providers have enforceable rights under 42 U.S.C. § 1396a(a)(30)(A)) *with Sanders v. Kansas Dept. of Social and Rehabilitation Servs.*, 317 F.Supp.2d 1233 (D.Kan. 2004) (42 U.S.C. § 1396a(a)(8) does not create a private

Here, Plaintiffs seek to enforce the provisions of the Medicaid Act found in 42 U.S.C. § 1396a(a)(3) and 42 U.S.C. § 1396a(a)(8). These two provisions provide that:

A State plan for medical assistance must–

\* \* \*

(3) provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness;

\* \* \*

(8) provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals;

42 U.S.C. §§ 1396a(a)(3) & (8).

In each of these provisions, the statutory language is clear and unambiguous. All individuals must be permitted to apply for medical assistance; such assistance must be furnished with reasonable promptness to all eligible individuals; and the state must provide an opportunity for a fair hearing to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness. Indisputably, these provisions create law, binding on those states choosing to accept Medicaid funding. These provisions satisfy the *Blessing* test because (1) Plaintiff and her children are the intended beneficiaries; (2) the rights sought to be enforced are specific and enumerated, not "vague and amorphous;" and (3) the obligation imposed on the states is unambiguous and binding. Pursuant to *Gonzaga*, however, the Court must determine if Congress *unambiguously* conferred the rights asserted by determining whether Congress used "rights-creating terms." *Gonzaga* 536 U.S. at 284.

---

right of action) *and Long Term Care Pharmacy Alliance v. Ferguson*, 362 F.3d 50, 58-59 (1st Cir. 2004) (providers do not have enforceable rights under 42 U.S.C. § 1396a(a)(30)(A)).

Prior to *Gonzaga*, several cases held that section § 1396a(a)(8), known in the case law as the "reasonable promptness" provision, created federal rights enforceable under § 1983. *See Westside Mothers v. Haveman*, 289 F.3d 852, 864 (6th Cir. 2002); *Doe v. Chiles*, 136 F.3d 709, 719 (11th Cir. 1998). Subsequent to *Gonzaga*, however, courts have split over whether the "reasonable promptness" provision creates a private right of action. Some courts continue to hold that the "reasonable promptness" provision creates a private right of action. *See, e.g., Sabree v. Richman*, 367 F.3d 180, 192 (3rd Cir. 2004); *Bryson v. Shumway*, 308 F.3d 79, 88 (1st Cir. 2002). Other courts have held that the provision does not create a private right of action. *See, e.g., Sanders v. Kansas Dept. of Social and Rehabilitation Servs.*, 317 F.Supp.2d 1233, 1250 (D.Kan. 2004); *M.A.C. v. Betit*, 284 F.Supp.2d 1298, 1307 (D.Utah 2003).

The Court is persuaded by the rationale set forth in *Sabree* and *Bryson* that § 1396a(a)(8) does create a private right of action. In particular, the Court is convinced that the provision contains the "rights-creating" language described in *Gonzaga*, and that the provision is "phrased in terms of the persons benefited," *Gonzaga*, 536 U.S. at 284. Section 1396a(a)(8) includes the term "shall"--a term which the *Gonzaga* court emphasized is "the sort of explicit right-- or duty-creating language" necessary "to impute to Congress an intent to create a private right of action." *Id*. at 284 n. 3. It also references "all eligible individuals" as those to whom medical assistance must be provided.[8] Based on this language, the Court concludes that Plaintiff has an enforceable right of action under 42 U.S.C. § 1396a(a)(8). Because the language of

---

[8] The Court is aware of dicta in *Lewis v. New Mexico Dept. of Health*, 261 F.3d 970, 976-77 (10th Cir. 2001), indicating that this particular statutory provision is ambiguous in certain respects. The ambiguity found by the *Lewis* court, however, was whether the plaintiffs in that case were "eligible individuals" under the statute. In this case, there is no question that Plaintiff's children are "eligible individuals."

§ 1396a(a)(3) is virtually indistinguishable from § 1396a(a)(8), for the same reasons discussed above, the Court finds that Plaintiff has an enforceable right of action under 42 U.S.C. § 1396a(a)(3) as well.

## II.  Exhaustion of Administrative Remedies

Under the Medicaid statutes and regulations, Medicaid recipients may request a fair hearing, request a continuation of their benefits pending the outcome of the fair hearing, and appeal the final agency decision to the state district court.  It is undisputed that Plaintiff did not avail herself of any of these administrative remedies.  Defendants contend that Plaintiff's failure to exhaust available administrative remedies necessitates the dismissal of her claims.  A plaintiff, however, is not required to exhaust administrative remedies prior to filing a § 1983 claims.  *See Porter v. Nussle*, 534 U.S. 516, 523, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) ("plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court"); *Wilder,* 496 U.S. at 523 (holding that Medicaid Act permits enforcement under § 1983 notwithstanding inclusion of alternative state administrative procedures); *Houghton v. Reinertson*, 382 F.3d 1162, 1167 n.3 (10th Cir. 2004) (failure to exhaust administrative remedies is not fatal to a § 1983 challenge to revised Medicaid eligibility rules).

## III.  Due Process

Defendants contend that Plaintiff cannot support a claim for denial of procedural due process because she was given notice and an opportunity to be heard with respect to the proposed termination of her children's benefits and subsequent closure of their cases.  Plaintiff's Complaint, however, alleges that Defendants' notice was inadequate in a number of ways.  Assuming these

well-pleaded facts are true and drawing all reasonable inferences in favor of Plaintiffs, the Court finds that these allegations are sufficient to state a claim for a due process violation.

## IV.  Fifth Amendment

Plaintiff's due process claims were brought under the Fifth and Fourteenth Amendments. Defendants assert that Plaintiff's Fifth Amendment claims must be dismissed because Defendants are state not federal actors.  Plaintiff concedes that the Fifth Amendment does not apply to Defendants and that her substantive and procedural due process claims should have been based exclusively on the Fourteenth Amendment.  Accordingly, the Court will dismiss Plaintiff's Fifth Amendment claims.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss, filed on May 12, 2005, **[Doc. No. 3]**, is **GRANTED in part** and **DENIED in part**.  Plaintiff's Fifth Amendment claims are hereby dismissed.  In all other respects, the motion is denied.

Dated this 14th day of March, 2006.

_____
MARTHA VAZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiff:
    Gail Evans, Esq.
    John Bouman, Esq.
    Mary Lou Boelcke, Esq.
    Chamiza Antencio-Pacheco, Esq.

Attorneys for Defendants:
    Susan K. Rehr, Esq.
    Paul R. Ritzma, Esq.